JUSTICE GRAY,
dissenting.
I respectfully dissent from the Court’s opinion. Stripped to its essentials, the Workers’ Compensation Court’s order concluded that no controversy existed under § 39-71-612, MCA, regarding Madill’s early demands for permanent total disability status because the State Fund indicated its willingness to reconsider that status on receipt of additional information and, on receipt of that information, permanent total disability status was conceded. The court also concluded that Madill was not entitled to fees under § 39-71-612, MCA, relating to the 1991 partial lump sum advance because he had petitioned for lump sum conversion of all future benefits and dropped that demand at the time of trial, instead negotiating a partial lump sum advance which included attorney fees. I would affirm these conclusions. While time does not permit a full and complete recitation of my concerns with the Court’s opinion and the bases therefor, I set those concerns out briefly below.
My primary area of concern with the Court’s opinion relates to its presentation of the so-called undisputed facts. I agree with the Court that the hearing examiner’s findings of fact were not appealed and, as a result, that they constitute facts for purposes of this case. I also agree that the parties stipulated to certain factual and exhibit matters.
Unfortunately, the Court’s statement of the so-called undisputed facts is not confined to either the hearing examiner’s unchallenged *464 findings or the matters stipulated by the parties. Overall, it is my view that the Court selectively presents certain facts and omits other pertinent facts; moreover, even as to those “facts” it chooses to present, some are erroneous, while others are incomplete. Many are liberally interspersed with implicit or explicit editorial comment, not to mention legal commentary, which is far afield from the hearing examiner’s findings and from any actual undisputed fact. The effect of the Court playing fast and loose with the facts is exactly as intended: to place a decidedly negative ánd inappropriate cast on the State Fund’s actions in order to “set up” the reader for the conclusions the Court later reaches. Because it apparently would be both fruitless and futile to set out each instance of the Court’s actions in this regard, I mention only a few, confident that these examples will make clear both the error contained in the Court’s presentation of the facts and the ultimate error in the Court’s conclusions reached by applying the law to the so-called undisputed facts.
An early example of the Court’s inclusion of its own editorial commentary into the presentation of the so-called undisputed facts is found in the Court’s discussion of the State Fund’s actions following Dr. Sousa’s updated report in May of 1988. The Court correctly states that the updated report was requested by the State Fund as a follow-up to an earlier report limiting Madill to sedentary employment. In the updated report, as the Court observes, Dr. Sousa repeated his view that Madill was “restricted with regard to his employment capabilities.” The Court then begins its next paragraph, purportedly still discussing facts, as follows:
In spite of that information, and without establishing that there was employment to which Madill could return, as required by ... Coles, ....
There is nothing of a factual nature in those opening clauses, and certainly nothing taken from the hearing examiner’s findings. The “in spite of’ phrase is a negative connotation added by the Court in the midst of supposedly undisputed factual material. In addition, it goes without saying that the “without establishing the Coles requirements” comment is legal commentary by the Court interspersed into purported undisputed facts.
These objectionable commentaries merely obfuscate the actual— and, in and of itself, neutral — factual situation being presented in this portion of the Court’s opinion; namely, that within two weeks of receiving the updated report from Dr. Sousa, the State Fund advised Madill’s counsel that because Madill had reached maximum healing *465 and been retrained, his benefit rate was being reduced. Moreover, I note, as the hearing examiner found, that the settlement offer contained in the State Fund’s letter to Madill’s counsel — and referred to by the Court — was a continuation of a settlement offer already “on the table.” The Court neglects to include this information.
An example of the Court’s use of selective and incomplete facts in order to “build its case” against the State Fund from the outset follows soon after. The Court states that “[o]n October 28,1988, the attorney for the State Fund rejected a mediator’s suggestion that a Coles analysis be performed.” I agree that this is a fact which is explicitly contained in an exhibit in the fairly voluminous record in this case. It is clearly a “selective” fact, however, intentionally chosen for the negative impact it produces in the reader. It also is the Court’s only reference to the mediation component of this case which was addressed by the hearing examiner and whose findings in this regard are totally ignored by the Court.
The actual facts regarding the mediation are that Madill petitioned for the mediation following the State Fund’s June 9, 1988, rejection of his request to be returned to total disability status. As the hearing examiner found:
Mediator William Connor issued his recommendation on October 17, 1988. Mr. Connor did not recommend reinstatement ofTTD or payment of PTD. Despite disagreements with various aspects of the recommendations on the part of both parties, the mátter was not appealed to the Workers’ Compensation Court.
(Emphasis added.) The Court conveniently omits these facts because to include them would so clearly undercut its negative depiction of the State Fund’s actions.
Further examples of the Court’s faulty presentation of the so-called undisputed facts in this case abound. In discussing the parties’ ongoing efforts at seeking and providing additional information, the Court editorializes — in its factual discussion of the State Fund’s referral of Madill to Crawford Rehabilitation Services for further evaluation — that the State Fund wrote to Madill’s counsel in August of 1989 requesting additional information “[i]n spite of all the mentioned information.” There is nothing factual about the use of “in spite of.”
Shortly thereafter, the Court sets out the State Fund’s August 30, 1989, letter stating that it did not agree “at this time” that Madill was permanently totally disabled and its referral of Madill to Crawford. The Court then adds, “[i]n the meantime, it had been necessary for Madill’s attorney to continue employing the services of his own *466 vocational consultant to monitor the investigation and reports being given by Crawford.” The hearing examiner made no finding that such employment “had been necessary;” he found only that Madill’s counsel had employed a vocational consultant to maintain contact with Crawford and update him on developments regarding Madill’s employability status.
And so it continues. The Court states that the State Fund’s offer of February 18, 1991, was based on benefits payable to Madill until age 65; it then adds its combined editorial and legal commentary in the midst of the so-called undisputed facts by stating “[i]t did so in spite of the fact that he was entitled to disability benefits for the remainder of his lifetime.” Here, even more important than the improperly included editorial and legal commentary, is the Court’s plain error in reporting the “until age 65” basis on which the State Fund purportedly calculated its offer. Contrary to the Court’s version of the fact, the letter communicating the offer clearly states that the figures were calculated “for both the time between now and age 65 and the balance of projected lifetime benefits;” the hearing examiner’s corresponding finding is that the settlement offer was “net of projected lifetime benefits.” To its clear misrepresentation of both the State Fund’s actions and the actual undisputed facts of record, the Court then adds its editorial and legal commentary. Still purporting to be presenting undisputed facts, the Court then inserts its own characterization of the legal effect of a nonexercised acceptance of the State Fund’s offer, matters upon which the hearing examiner neither found nor concluded.
The Court then “neglects” to include the fact — found by the examiner — that, after Madill rejected the $90,000 offer and in the course of subsequent negotiations, “a verbal offer was made to increase the $90,000 offer by 20% to account for attorney fees, for a total offer of $108,940.80.” The record reflects that this offer was extended in May of 1991. Neither the record nor the examiner’s findings reflect any response by Madill to this offer prior to filing his petition in the Workers’ Compensation Court, in July of 1991, for partial conversion of future benefits to a lump sum. Thus, at the time of that petition, the State Fund’s offer was in excess of $108,000 and it had been “on the table” for approximately two months.
Afinal example of the Court’s mistreatment of the facts in this case is its paragraph about Madill’s petition for partial conversion and the settlement reached in that regard. Having failed to set forth important facts regarding the State Fund’s latest offer and the short period *467 of time between that offer and the petition, the Court then “neglects” to include the fact — as found by the hearing examiner — that $21,903.60 of the partial lump sum conversion to which Madill and the State Fund agreed was “for payment of attorney fees and costs incurred over the period of the attorney/client relationship.” The Court also fails to include the facts that the agreement was not approved by the Employment Relations Division until January 3, 1992, and that — three months thereafter — Madill’s counsel requested that the State Fund pay attorney fees and costs totaling just over the $21,903.60 amount contained in the lump sum conversion for that express purpose.
Perhaps the Court somehow fails to see any relevance in the actual undisputed facts of this case vis-a-vis the attorney fee issue before us. Perhaps the actual facts are simply too “inconvenient” to be noticed by the Court. In any event, as I indicate briefly below after a short digression relating to legal principles, the actual undisputed facts do not comport with the results the Court produces on each of the three attorney fee subissues.
I begin this portion of my discussion by stating without equivocation that I agree with the “plain language” principles set forth by the Court and with the dictionary definition of “settled” which it advances. As a result, I also agree with the Court that, had the Workers’ Compensation Court denied claimant’s petition for attorney fees solely on the basis that his benefits were not the result of a court award, such a denial would have constituted reversible error. As set forth at the outset of this opinion, however, the court concluded that Madill was not entitled to fees for additional reasons which are further addressed below. Moreover, while I agree with the Court that, pursuant to our case law, the award of attorney fees under § 39-71-612, MCA, is not discretionary and that the Department erred in concluding otherwise, the Workers’ Compensation Court did not affirm that portion of the Department’s order denying fees; thus, that issue is not before us in this case.
I also agree with the Court that, at certain points in time, “controversies” existed between Madill and the State Fund with regard to: 1) reinstating him to temporary total disability; 2) whether he was permanently totally disabled; and 3) the lump sum conversion. I disagree with the Court’s attempt to interpret the statutory word “settled” in a vacuum in these regards by refusing to recognize any element relating to when and how the parties reached resolution of *468 the issues, and I address the Court’s application (or lack thereof) of the law to the actual facts of this case further below.
Before doing so,'however, it is important that I state my disagreement with the Court’s overruling of three decisions “to the extent [they] have ignored the plain language in § 39-71-612, MCA,” regarding settlement. All else aside, “to the extent” overrulings generally give little guidance to practitioners or trial courts as to precisely what is being overruled. That is particularly true here, where a fair reading of at least Lasar and Komeotis makes it clear that no issue regarding “settlement” was raised and, as a result, no such issue was addressed by this Court in those cases. Under such a circumstance, criticizing those decisions for “ignoring” the statutory language seems absurd. Nor is there any apparent reason for overruling decisions which did not raise or address an issue merely because this case does address that issue. Unfortunately, time does not permit a more thorough statement of why I believe that the Court is in error in overruling these cases, as it is more important to return to how the Court disposes of the three attorney fee subissues before us.
The Court does not apply the principles it sets forth to the actual undisputed facts in this case. Indeed, it only minimally bothers with facts at all in its resolution of the subissues after stating that “the parties resolved three separate controversies by settlement.” The only “factual” statement about this case which appears thereafter is that “[i]n each of the three instances where benefits were demanded, they were ultimately paid based on the same information which had been in the State Fund’s possession while they were denied.” This single “factual” statement is simply not true.
With regard to Madill’s status during the 1988-89 period, the facts and record are clear that the parties were in close contact throughout the period, with the State Fund making — and remaking — its determinations based on frequently updated information from Madill. After the State Fund’s reclassification of Madill in May of 1988, based on his maximum healing and retraining, Madill sought mediation of the issue and the mediator “did not recommend reinstatement of TTD or payment of PTD.” Thereafter, Madill supplied yet another updated report from Dr. Sousa. Because that report did not take into account Madill’s retraining in human services at Flathead Valley Community College, the State Fund advised that Madill’s vocational information was incomplete. In response, Madill forwarded a rehab consultant’s report in August of 1989 which concluded that Madill’s retraining had not enhanced his employability and that he was “not employable in *469 his normal labor market.” On August 30, 1989, within two weeks of receipt of this report, the State Fund determined to reinstate Madill’s temporary total disability benefits retroactive to the date of their termination. Given this record, it is beyond my imagining how the Court can state that the State Fund reinstated Madill to temporary total disability in August of 1989 based on the same information in its possession when it terminated those benefits and reclassified him in May of 1988.
The same is true of the Court’s statement that the State Fund conceded in 1991 that Madill was permanently totally disabled based on the information in its possession in August of 1989. In this regard, the record is clear that when it reinstated Madill to TTD, the State Fund disagreed “at this time” that Madill was entitled to permanent total disability benefits. The State Fund then referred Madill to Crawford for further rehab evaluation. Following Dr. Sousa’s disapproval of the job suggested by the Crawford rehab consultant, the State Fund conceded that Madill was permanently totally disabled. Again, the ultimate decision clearly was not based on the information in the State Fund’s possession in August of 1989.
Finally, with regard to the lump sum issue, the Court suggests— without ever referring to facts — that the partial lump sum conversion to which Madill and the State Fund agreed in 1991 was greater than the amount paid or tendered by the insurer. The genesis of this notion cannot be ascertained from the Court’s opinion and I will not attempt to posit the path by which the Court arrived at it. The facts relating to this subissue, however, are as follows.
Immediately following the State Fund’s determination in January of 1991 that Madill was permanently totally disabled, Madill requested the lump sum conversion of all of his future benefits. The State Fund was not interested in a total conversion without a full settlement of Madill’s case (and the law does not require otherwise). By early March of 1991, the State Fund had made a settlement offer and Madill had rejected it. The State Fund increased the settlement offer to approximately $108,000 — including attorney fees — in May of 1991 and Madill did not respond or present a different proposal for consideration. Instead, in July of 1991, Madill petitioned the Workers’ Compensation Court for a lump sum conversion of all of his future benefits. At the time of trial several months later, Madill dropped that request and the parties negotiated and agreed on a partial lump sum conversion in the amount of approximately $68,000, including attorney fees.
*470 In short, the parties were attempting to accomplish different things from the outset. Madill started with a request and petition for a total lump sum conversion and ended up agreeing with the State Fund on a partial lump sum conversion. The State Fund began by-desiring a total settlement, offered in the amount of $108,000, and settled with Madill on a partial lump sum conversion in the amount of $68,000. How this meets the requirements of § 39-71-612, MCA, of a settlement in excess of any amount tendered by the State Fund is not explained by the Court. It is my view that the Court is simply in error, and unwilling to apply its legal principles to the facts of this case. In addition, of course, the anomaly — to state it gently — of now awarding attorney fees which were agreed upon and paid as part of the partial lump sum conversion, is never explained — or even referred to — by the Court.
I dissent.
CHIEF JUSTICE TURNAGE and JUSTICE ERDMANN join in the foregoing dissenting opinion.